Moncure, P.,
delivered the opinion of the court.
This case involves a question as to the construction of the will of Sampson Pelter, deceased, who died in December, 1865, leaving a will hearing date the 24th day of November, 1856, which was recorded on the 26th of March, 1866, in the county court of Augusta county, in which county lie resided at the time of his death. The question is, whether Sampson Pelter, Jr., son of the said testator, ivas entitled under the said ivill to a fee simple estate, or only to a life estate, in the land given him by his father by the said will. The court below, in the decree appealed from, decided that he was only entitled to a life estate in the said land under the said ivill. Is that decision correct, or is it erroneous ?
It seems that the testator had four sons and one daughter, and devised his land in several portions to his four sons, giving his daughter a nominal legacy only. The portions of the will which seem to be material to be stated, are as follows:
“ I, Sampson Pelter,” &c., “ do make this my last will and testament,” &c.
“ 1st. I will and bequeath to my. son George the And Farm,” &c.
“ 2nd. I will and bequeath to my son Joseph the • Old Thomas Farm,” &c.
“ 3rd. I will and bequeath to my son James the use and benefit of the farm on South river, known as the Thomas or Croft Place,” &c., “ during his natural life.”
*46 “ 4tli. I will and bequeath to my son Sam’l (that is Sampson), the use and benefit of the Home Hace which I now occupy, containing about three hundred acres, during his natural life. I will and bequeath to my daughter, Haney Kremer, the sum of five dollars.”
Then follow various other provisions of the will, none of which are material to be stated here except the following, viz:
“ Should my sons George, James, Joseph and Samuel, or either of them, die without ishue (issue), I direct that what has been bequeathed to them shall be equally divided between the surviving brothers—■ James and Samuel for their use and benefit during their natural life.”
Thus we see that by the first and second clauses of . the will, an estate in fee simple is given to each of the sons, George and Joseph, while by the third and fourth clauses, an estate for life only is given to each of the sons, James and Samuel or Sampson ; and that by the subsequent provision before stated of the will, there is a limitation over of the portion of each at his death on the contingency of his dying without ishue (issue.)
An estate in fee simple is given to each o.f the sons, George and Joseph, as aforesaid, although the gift to them is without any words of limitation thereto annexed, it being provided by laiv that “ where any real estate is conveyed, devised, or granted to any person without any words of limitation, such devise, conveyance or grant, shall be construed to pass the fee simple or other the whole estate or interest which the testator or grantor had power to dispose of in such real estate, unless contrary intention shall appear by the will, conveyance or grant.” Code, p. 889, ch. 112, § 8.
In this case it seems the testator owned the absolute fee simple estate in the lands devised by him to *47 his sons, George and Joseph, respectively, and therefore his devise of the said lands to them was of the said fee simple estate therein, subject only to the limitation over contained in the will as aforesaid, on the contingency of their dying without issue respectively, which means a dying without issue living at the time of the death of the first taker, or born to him within ten months thereafter. It being further provided by law that “ every limitation in any deed or will contingent upon the dying of any person without heirs, or heirs of the body, or issue, or issue of the body, or children, or offspring, or descendant, or other relatives, shall be construed a limitation to take effect when such person shall die not having such heir or issue, &c., as the case may be, living at the time, of his death or born to him within ten months thereafter, unless the intention of such limitation be otherwise plainly declared on the face of the deed or will creating it.” Id. § 10. The intention of such limitation is not, in this case, otherwise declared.
JBut the devise by the testator to his two sons, James and Sampson respectively, was expressly of the use and enjoyment of the land for their natural life only, and not in fee simple, and there is nothing in any other part of the will ivhich enlarges this life estate into a fee simple estate or any estate longer than a life estate; for the contingent limitation to the surviving brothers in the event of the death of his four sons, or either of them, without issue as aforesaid, is expressly declared as to James and Samuel or Sampson, to be “ for their use and benefit during their natural life ” only. If the word issue in this case had been intended to mean issue indefinitely as aforetime, instead of issue living at the death of the first taker, as under the statute aforesaid, even then the life estate of the first taker would not have been enlarged *48 by the effect of the limitation over into an estate in f’ee simple. It being further provided by law that where any estate, real or personal, is given by deed or will to any person for his life, and after his death ieirs or ie heirs of his body, the conveyance shall be construed to vest an estate for life only in such person and a remainder in fee simple in his heirs or the heirs of his body.” Id. § 11.
The court is therefore of opinion that Sampson Belter, Jr., was entitled under the said will only to a life estate in the latid therein devised to him.
But another question is raised in the argument of the learned counsel for the appellant in this case: Whether, at the death of the said Sampson Belter, leaving issue living at his death, such issue would be entitled under the said will to the land given thereby to the said Sampson for life, or whether George Belter would be entitled to it as residuary devisee under the will; the said counsel contending that the said George Belter would be so entitled, and not such -issue of the said Sampson Belter.
The court is of opinion that such issue would be so-entitled, and not the said George Belter.
The residuary devise under which it is contended that the said George Belter would he so entitled is in these words:
“ The balance of my estate of whatever character or kind it may be, at the expiration of the ten years before mentioned, I will and bequeath to my son George.”
This clause was not intended to embrace any interest in any of the lands devised to the testator’s four sons respectively hy the first four clauses of the will. After making these devises the testator, by liis- will, creates a trust for the purpose of paying his debts, by directing that his son George shall have the full pos *49 session, use and benefit of all the estate, real and personal, of which he may die possessed, except certain of the farms devised to some of his sons as designated in the will; and he directs that all his personal property shall be inventoried and valued by five disinterested freeholders, and at the expiration of the said term of ten years, shall be accounted for and disposed of as thereinafter named, except what may perish or naturally decay and wear out. He then directs that his executors shall sell at public sale all the personal estate that may be left after the expiration of the ten years, except his slaves, which “ shall be valued as the personal property above named, by five disinterested freeholders, and equally divided between George, Joseph, James and Samuel—James and Samuel only to have the use and benefit of said slaves during their natural life -except John, Junius and Abraham, whom he, in effect, emancipates, and in whose favor he creates a trust.
Then immediately follows the residuary clause hereinbefore inserted.
The testator then expresses a desire and wish that his son George should never let his daughter, Haney Krerner, “ suffer or want for the necessaries of life while he may live.” After which immediately follows the clause hereinbefore inserted in these words: “ Should my sons George, James, Joseph and Samuel, or either of them, die without issue, I direct that what has been bequeathed to them shall be equally divided betwéen the surviving brothers—James and Samuel for their use and benefit during their natural life.” And then follow several other clauses which need not be inserted or stated here.
How it is expressly declared by the clause twice hereinbefore stated that in the event of the death of *50 either of the four sons of the testator without issue, that is issue living at such son’s death, the estate given by the will to him “ shall be equally divided between the surviving brothers.” In that event, therefore, there can be no doubt or difficulty. The language of the will is express and the meaning is plain.
But who will be entitled to the estate given to Samuel or Sampson Pelter in the event of his death leaving issue then living ? "Will such issue be entitled, or will George Pelter as residuary devisee be entitled, or will the heirs-at-law of the testator be entitled ? Clearly, we think, such issue will be entitled by plain implication of the will. Can there be a doubt that the testator so intended ? and is not such intention sufficiently expressed, or at least implied, in the will ? "Why did the testator give the portion of his son Sampson to his surviving brothers only in the event of his . dying without issue ? "Why but because in the only other possible event, to-wit: the death of his said son leaving issue living at such death, he intended that such issue should have the said portion ? There is no real or necessary conflict between such intention and the preceding clause containing the residuary devise to George Pelter as aforesaid. They are rendered perfectly consistent by the context.
It would make no difference in the result of this suit if in the event of the death of Sampson Pelter leaving issue living at his death, the heirs-at-law of the testator should be entitled to the said portion, instead of such issue under the will; for such issue' would be a part of the said heirs-at-law.
The learned counsel for the appellant, in his argument of this case, referred to a great many books and cases in support of his views, Avhich we do not consider it necessary to review in this opinion. They would, no doubt, be conclusive in .his favor, if the case *51 had occurred before the revision of our statute law in 1819; but as it occured after the said law ivas then amended, embracing in the amendments §§ 9 and 10, ch. 112, p. 189 of the Code before referred to, we think the law is clearly the other way. Before those amendments were made, a devise to A for life, and if he died without issue then to B, created an estate tail in-A, under the rule in Shelley’s case, and the issue of A was thus provided for. But when, by one of those amendments, it was declared that “ every limitation in any deed or will contingent upon the dying of any person without heirs,” &c., “ shall be construed a limitation to take effect when such person shall -die not having such heir,” &c., as the case may be, living at the time of his death, or born to him within ten months thereafter, the issue if living at the time of his death or born to him within ten months thereafter, would be wholly unprovided for, unless they can be considered as tenants in remainder at the death of A by implication of the Avill; and such would seem to be its plain implication in such a case. There is no decision of this court to the contrary; and although some of the decisions cited by the learned counsel for the appellant may seem to be to the contrary, yet such decisions, if there be any such, are not binding authority upon this court, and do not, in our opinion, expound the law correctly.
"We are therefore of opinion that there is no error 'in the decree appealed from, and that it ought to be affirmed.
Decree arrirmed.